**STATE of Missouri, Respondent,**

**v.**

**Jack Virgil CAFFEY, Appellant.**

**No. 53403.**

Supreme Court of Missouri,
Division No. 1.

March 12, 1969.

Norman H. Anderson, Atty. Gen., Jefferson City, Norman Humphrey, Jr., Sp. Asst. Atty. Gen., Independence, for respondent.

HOUSER, Commissioner.

Jack Virgil Caffey was convicted of stealing property of a value of at least $50 ($175 in currency), §§ 560.156 and 560.161, RSMo 1959, V.A.M.S., and sentenced to the maximum punishment for that offense, 10 years' imprisonment.

On this appeal he denies the jurisdiction of the circuit court to try him, claiming the

right to discharge on the ground that the magistrate court deprived him of his constitutional right to a speedy trial, due process of law and an effective appointment of counsel [1] and that the state was guilty of laches in bringing him to trial.[2] These complaints were embodied in a motion to dismiss the charge and a motion to bar further prosecution, both of which were filed in circuit court, heard and overruled prior to the trial of the charge of stealing.

Caffey, who was serving a penitentiary sentence on another charge, see State v. Caffey, Mo.Sup., 404 S.W.2d 171, was released from confinement under a habeas corpus proceeding instituted by the prosecuting attorney of Randolph County and brought before the magistrate judge of that county on July 18, 1966 to answer the complaint charging him with stealing over $50. The complaint was read to him. He pleaded not guilty, requested the appointment of counsel and asked that he be given an immediate preliminary hearing on the charge. The magistrate informed Caffey that an attorney would be appointed and Caffey was remanded to the jail. Next day the magistrate made an order of record appointing Austin Walden as attorney for Caffey, but it appears that neither Walden nor Caffey was informed of the appointment for approximately ten months (sometime in May, 1967). On July 19, 1966, without notice to or consent by Caffey, the magistrate judge continued the case to May 23, 1967. Between these dates Caffey was incarcerated in the Randolph County jail. From July 18, 1966 to May 3, 1967 Caffey made no formal request of court or prosecuting attorney for a preliminary hearing and as far as this record shows took no affirmative steps to obtain relief until May 3, 1967, when he wrote a letter to the magistrate, reciting the history of his case, telling of his plight, stating his belief that under Rules 22 and 23, the "180 day" law,

1. As guaranteed by the Sixth Amendment and the due process clause of the Fourteenth Amendment to the United States Constitution, and Article I § 18(a) of the Constitution of Missouri, 1945.

2. Under §§ 544.270, 544.320 and 545.820, RSMo 1959, V.A.M.S., and Criminal Rules 23.03, 23.06 and 29.01.

and the state and federal constitutions he had been deprived of various rights, including the right to be brought to trial, without due process of law and without regard for his right to a speedy trial. He asked that the letter be considered as a petition for a writ of habeas corpus; that the state be barred from prosecuting him further and that he be returned to the department of corrections to complete the 6-year sentence he was serving when brought before the magistrate court on July 18, 1966.

Having received no answer Caffey wrote the circuit judge a letter on May 15, 1967, enclosing a copy of the letter of May 3, and requesting the circuit court to consider the facts therein and grant him a prompt hearing on this petition for a writ of habeas corpus. Immediately thereafter and on May 16, 1967 Caffey was taken to the magistrate court. There for the first time Caffey conferred with his attorney, Mr. Walden, who told him that he would look into his case. Caffey was returned to jail. A week later, having heard nothing further, Caffey wrote Mr. Walden asking him to withdraw as his attorney for the reason that Caffey "thought that this might be leading to another continuance and [he] didn't desire that."

On May 23, 1967 Caffey was again taken before the magistrate court. The docket entry that day follows: "Defendant appeared in person. His attorney, Honorable Austin Walden, was unable to appear at this hearing. Defendant requested an immediate hearing and strongly objected to any continuance. Cause continued pending agreement between state's attorney and defendant. Austin Walden asks leave to withdraw from the case." After Mr. Wal-

den withdrew Senator Richard J. Chamier was appointed to represent Caffey.

The preliminary examination was held on June 14, 1967. After the hearing commenced Caffey and his counsel had a disagreement and the senator asked for and was granted permission to withdraw. Caffey thereupon waived any right to the services of an attorney and on his own behalf objected to the jurisdiction of the court on the ground of lack of prosecution. At the conclusion of the hearing Caffey was bound over to answer the charge in circuit court.

On July 5, 1967 Marion Lamb was appointed as his attorney and he represented Caffey in the presentation of the pretrial motions in circuit court, at the trial and on this appeal, circumscribed by Caffey's insistence that he not put on any defense at the trial other than that of lack of jurisdiction. The case was tried in circuit court on October 10, 1967.

On this appeal Caffey does not contend that the circuit court committed any error in the trial of the charge of stealing. His complaints are limited to the question of the jurisdiction of the circuit court to try the case.

The first question is whether the failure to effectively appoint counsel, and the nearly 11-month delay in according him a preliminary examination, violated his right to a speedy trial and denied him due process of law under the constitutional provisions relied upon,[3] as a result of which the courts were divested of jurisdiction, thereby requiring reversal of the judgment of conviction and discharge of the accused.

---

3. The Sixth Amendment to the United States Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * *."

Article XIV, § 1, idem, prohibits any state from depriving "any person of life,

liberty, or property, without due process of law; * * *."

Section 18(a), Art. I, Constitution of Missouri, 1945, provides that in criminal prosecutions the accused shall have the right to " * * * a speedy public trial by an impartial jury of the county."

The constitutional right to a speedy trial has no application until a criminal *prosecution* is commenced. The constitutional provisions invoked contemplate a pending *charge* and not merely a pending complaint, which represents a mere possibility that a criminal charge will be filed. Felonies are prosecuted by indictment or information. Between commitment on July 18, 1966 and preliminary examination on June 14, 1967 there was no criminal prosecution—no criminal charge—no indictment or information charging Caffey with stealing. His constitutional right to a speedy trial commenced on July 5, 1967, the date of the filing of the information in this case. Parker v. United States, 6 Cir., 252 F.2d 680, cert. denied 356 U.S. 964, 78 S.Ct. 1003, 2 L.Ed.2d 1071; People v. Jordan, 45 Cal.2d 697, 290 P.2d 484; Rupley v. Johnson, 120 Cal.App.2d 548, 261 P.2d 318; People v. Wilson, 10 A.D.2d 297, 200 N.Y.S.2d 792; People v. Aguirre, 181 Cal.App.2d 577, 5 Cal.Rptr. 477; State v. Burrell, 102 Ariz. 136, 426 P.2d 633 [1]; Bruce v. United States, 5 Cir., 351 F.2d 318; Reddick v. State, 219 Md. 95, 148 A.2d 384, cert. denied Reddick v. State of Maryland, 360 U.S. 930, 79 S.Ct. 1448, 3 L.Ed.2d 1544; 21 Am.Jur.2d Crim. Law § 248; 22A C.J.S. Criminal Law § 474. Caffey's constitutional right to a speedy trial was not violated. State v. Maldonado, 92 Ariz. 70, 373 P.2d 583, 585, 586.

There is no contention that the delay from July 5, 1967 to the date of trial, October 11, 1967, violated Caffey's constitutional right to a speedy trial. (Apparently during that period Caffey was remanded to the penitentiary.)

On this record it is clear that Caffey was denied the right to an immediate preliminary examination [4] and the right not to have the examination continued for more than ten days at one time.[5] His incarceration for nearly 11 months before according him an examination which the rule requires be conducted "as soon as possible" was illegal but an irregularity only, and not such as to deprive the magistrate court of jurisdiction over the person of the accused or of the subject matter, or to deprive the trial court of jurisdiction to try the accused. 22 C.J.S. Criminal Law § 335, p. 865.

Criminal Rule 23.06, authorizing the postponement of the preliminary examination from time to time, not to exceed ten days at one time, is designed to prevent undue delays. Its purpose is to insure as speedy a hearing as practical under the circumstances. It recognizes, however, that there may be circumstances in which the examination cannot properly be held within ten days, and refers to adjournments for cause. Although the unauthorized and illegal act of the magistrate in continuing the examination from July 19 to May 23 destroys any presumption of regularity or that the continuance was for cause, it was not jurisdictional; it did not divest the magistrate court of jurisdiction. It was a

---

4. Criminal Rule 23.02 provides that no information charging the commission of a felony shall be filed against any person unless the accused shall first have been accorded the right of a preliminary examination before a magistrate of the county where the offense is alleged to have been committed.

Criminal Rule 23.03 provides that the magistrate before whom an accused is brought "shall proceed, *as soon as possible,* to examine the complainant and other witnesses produced in support of the prosecution, on oath, and in the presence of the accused, concerning the offense charged. * * * " (Our italics.)

5. Criminal Rule 23.06 provides that "if it be impractical to conduct an immediate preliminary examination, the examination may be postponed to a later date and an examination of the accused may be adjourned from time to time as the occasion requires, not to exceed ten days at one time, and said adjournment shall be allowed either to the prosecution or to the accused for the purpose of procuring the attendance of material witnesses, and for any other good and sufficient cause. * * * "

procedural irregularity which, although of a serious nature, was capable of being waived, and under the circumstances of this case was waived by Caffey not making timely complaint to the magistrate. Smith v. Kozak, Del.Super., 196 A.2d 821 [2, 3].

■ The delay did not deprive the circuit court of jurisdiction and thereby invalidate the conviction. The preliminary examination, and all matters leading up to it, including unnecessary delay and adjournments for more than ten days at one time, are procedural matters which amount to irregularities but do not go to the jurisdiction of the court. Even the absence of a preliminary examination "does not ipso facto deprive the circuit court of jurisdiction." Lambus v. Kaiser, 352 Mo. 122, 176 S.W.2d 494, 497, quoted with approval in State v. Keeble, Mo.Sup., 399 S.W.2d 118, 121. We approved this principle of Keeble as late as State v. Maloney, Mo. Sup., 434 S.W.2d 487, 496 [12]. The jurisdiction of the circuit court to try the charge of stealing was acquired on July 5, 1967 by the filing of the information. The time lapse between July 5 and the date of trial, October 11, is not suggested as sufficient delay to effect a discontinuance of the action.

■ "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166. The question, therefore, is whether the long delay deprived Caffey of a fair trial. Morse v. United States, 5 Cir., 256 F.2d 280 (1958); Blood v. Hunter, 10 Cir., 150 F.2d 640 (1945); cf. United States v. Mitchell, 322 U.S. 65, 70, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); Lyons v. State of Oklahoma, 322 U.S. 596, 597 note 2, 64 S. Ct. 1208, 88 L.Ed. 1481 (1944); State v.

Johnston, 140 Mont. 111, 367 P.2d 891 (1962); State v. Mihoy, 98 N.H. 38, 93 A.2d 661, 35 A.L.R.2d 852 (1953); State v. Mangino, 17 N.J.Super. 587, 86 A.2d 425 (1952); Commonwealth ex rel. Nagle v. Day, 181 Pa.Super. 605, 124 A.2d 157 (1956); Rosenthal v. State, 200 Tenn. 178, 292 S.W.2d 1, cert. denied, 352 U.S. 934, 77 S.Ct. 222, 1 L.Ed.2d 160 (1956); State v. Maldonado, 92 Ariz. 70, 373 P.2d 583 [9].

Caffey asserts that the illegal actions of the officers of the law deprived him of the benefits which naturally accrue to other prisoners in the custody of the department of corrections, namely, meritorious good time, blood donation time and parole consideration. These considerations, even if substantiated, have no bearing on the essential fairness of the trial on the charge of stealing over $50.

■ Caffey argues that as a result of the delay he was unable to contact and summon witnesses and gather evidence and that at the beginning of the trial in circuit court "evidence and witnesses for the defense were no longer available at that late date." His testimony at the hearing of the motion in bar with reference to the existence of a defense and the availability of witnesses to substantiate a defense was vague, indefinite and unconvincing. He did not actually testify that he had a defense. In his testimony that there were "several" witnesses and that it was "possible" that they would give alibi testimony he intimated that he had the defense of alibi but he did not positively so testify. He claimed to have been in the process of getting in touch with friends and that he had lost all contact with them "since he had been locked up for a year." This claim is without substance. It seems evident that as an inmate of the county jail he could have done as much for himself in rounding up witnesses as he could have while a prisoner in the penitentiary. He was unwilling to name these witnesses or suggest what testimony they might have given. Evidently the trial court did not believe this testimony and on this review we

find that Caffey failed to sustain the burden of proving that as a result of the delay he was hindered or prejudiced in the presentation at the trial of a valid defense.

■ Caffey contends that his arraignment before the magistrate was a critical stage of the proceedings and that he was disadvantaged by the refusal of the magistrate court to appoint counsel, who could have protected his constitutional rights, pressed for an immediate preliminary examination and insured a speedy trial. While the magistrate did not refuse to appoint counsel [but did on July 19, 1966 make an appointment of record] the appointment made was not effective because the magistrate failed to notify either the lawyer or the prisoner of the fact for a period of nearly ten months. When he made the order it was the duty of the magistrate promptly to inform Caffey and the lawyer of the appointment. His failure to do so was a frustration of Caffey's rights, but whether due to neglect of duty or malevolence this is not shown to have prejudiced Caffey in the conduct of the preliminary examination on June 14, 1967 or to have affected the fairness of his trial on October 11, 1967. He had competent counsel immediately prior to and at the preliminary examination (until he fell into disagreement with appointed counsel and elected to proceed in his own behalf) and he was afforded competent counsel at the trial.

■ Caffey suggests that if counsel had been provided him when requested his counsel could have applied for relief under § 222.080, RSMo 1959, V.A.M.S., which provides that any person imprisoned in a correctional institution may request a final disposition of any untried indictment or information pending against him while so imprisoned, and § 222.100 idem, which provides for the dismissal with prejudice of any untried indictment or information if he is not brought to trial within 180 days after request, etc. This relief, however, could not have been afforded Caffey

for the reason that these sections have no application to preliminary examinations. By their terms they apply only to untried indictments and informations. There was no untried information until July 5, 1967, on which date Marion Lamb was appointed counsel for Caffey.

■ Finally, Caffey proposes that the judgment of conviction be reversed because of laches on the part of the state; that all continuances after July 18, 1966 were either requested by the state or done on the court's own motion, over Caffey's objection, without any showing of good cause; that the continuance from July 19, 1966 to May 23, 1967 was illegal; that the continuances were made without any indication that the state ever intended to grant him his right to a preliminary hearing; that no explanation for the apparent contempt for his rights was ever offered; that the 10-month continuance, in violation of Criminal Rule 23.06, was "an arbitrary exercise of power by the magistrate judge and prosecuting attorney, suggestive of practices in a fascist state." If all of these facts be conceded they yet do not entitle Caffey to a reversal of the judgment and a complete discharge and exoneration. Delay in taking an accused before a magistrate for a preliminary examination, although illegal, will not invalidate the conviction ultimately obtained, in the absence of prejudice resulting from the detention. Morse v. United States, 5 Cir., 256 F.2d 280; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Fowler v. Hunter, 10 Cir., 164 F.2d 668, 670; State v. Maldonado, 92 Ariz. 70, 373 P.2d 583; Cooper v. State, 196 Kan. 421, 411 P.2d 652, 655. There is nothing to show that any statement or confession was obtained from Caffey during the time he was held. No fruits of the illegal detention were used against him at the trial. See Galbraith v. State, Miss.Sup., 184 So.2d 633. No such prejudice was shown.

■ Section 545.890, RSMo 1959, V.A.M.S.,[6] provides for the discharge of

---

6. Subject to the qualifying provisions of §§ 545.910 and 545.920, RSMo 1959, V.A.M.S.

any person indicted for any offense, and committed to prison, if he shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense which shall be held after such indictment found, unless the delay is occasioned by the prisoner or by want of time to try the cause. This and the following sections have no application to Caffey's case because they relate to persons *indicted* (or informed against) and not to persons as to whom a complaint only has been filed. Caffey was not informed against until July 5, 1967, and he was convicted at the next term of the court thereafter.

The judgment of conviction must be upheld because appellant's right to a fair trial of the stealing charge was not prejudiced. In upholding this conviction, however, we are not to be understood as condoning what appears on the face of this record to be an unexplained and unnecessary invasion of the appellant's rights in the procedures adopted prior to the filing of the information.

The remedy for this imposition on appellant's rights is to give appellant credit on his penitentiary sentence and judgment in our Case No. 51596 for the time spent in confinement in the Randolph County jail awaiting the preliminary hearing, and it is so ordered, and if there is not sufficient unserved time on that judgment and sentence to use all of the time in question, the balance shall be applied to the reduction of the judgment and sentence in the instant case. It is further ordered that a copy of the mandate of this court be transmitted to the appropriate officials of the Missouri Department of Corrections and the State Board of Probation and Parole.

Except for the foregoing allowance of credit for time previously served in the Randolph County jail, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., and STORCKMAN, J., concur; SEILER, J., concurs in the result.